Morton B. WHITE et al., Appellants
(Plaintiffs below),

v.

William B. OGBURN and Mina J. Ogburn,
Appellees (Defendants below).

No. 4317.

Supreme Court of Wyoming.

Dec. 12, 1974.

———◆———

Harry L. Harris, Evanston, and Peter H. Holme, Jr., of Holme, Roberts & Owen, Denver, Colo., for appellants.

E. J. Herschler, Kemmerer, and R. W. Johnston, Jr., of Cashen, Cheney, Johnston & Adamson, Montrose, Colo., for appellees.

Before PARKER, C. J., and McEWAN and GUTHRIE, JJ.

Mr. Justice GUTHRIE delivered the opinion of the court.

Appellants, plaintiffs below, prosecute this appeal from a judgment notwithstanding the verdict entered by the trial court after a verdict and judgment in the total sum of $84,500. Appellants base their claim for recovery on certain alleged false and fraudulent misrepresentations made to them at the time they purchased the ranch of the defendants, appellees herein, located in Uinta County, Wyoming. These misrepresentations are with reference to the carrying capacity of the ranch and the cost of a tractor included in the sale. Plaintiffs also asserted a claim, which was abandoned during the trial, in connection with the construction and cost of the ranch house.

Plaintiffs purchased the ranch near Robertson in Uinta County, Wyoming, from defendants on July 21, 1970, taking possession on October 1 of that year, except that the defendants were allowed to keep their cattle on the ranch but in no event would they remain after December 20, 1970. In the meantime plaintiffs moved their livestock thereon. Sometime later, in 1971, plaintiffs notified defendants of their dissatisfaction with the ranch and advised them it would not carry the number of cattle or animal units which had been represented. Plaintiffs, however, paid the balance due and thereafter brought this suit, alleging fraudulent misrepresentation which had induced them to buy the ranch and equipment and to pay the total sum of $272,500 therefor. The specific fraudulent misrepresentations upon which this claim is based so far as they are material herein are:

That the ranch in the past and would at the time of the representation carry 250 cows and 250 ewes and that it would carry more with a few improvements.

That a crawler tractor included in the sale cost approximately $11,000.

They further claim that these representations were false, that they were made knowing them to be false, that plaintiffs had no knowledge they were false, and that they were material and induced plaintiffs in reliance thereon in the purchase of this ranch.

Appellants base their claims of misrepresentation with reference to the carrying capacity of the ranch upon a brochure prepared and delivered to them by Van Schaak Land Company, which was active as an agent for appellees, and of assurances or statements by McWilliams, an employee of that company, that this ranch would carry the number of livestock set out in the brochure.

██ The applicable part of the brochure, insofar as carrying capacity and the sole question involving Van Schaak's representations are concerned, is as follows:

"Not only can the ranch be run as it has been in the past—250 cows and 250 ewes —but it could easily be developed to carry more animals."

In addition, during the negotiations Morton White inquired of McWilliams as to the carrying capacity and was assured it would carry 250 cows, which he defined as the capacity to maintain 250 cows and their calves into weaning time. Defendants asserted that these representations

were not false and further relied upon the proposition that these representations were expressions of opinion and statements of possible future events and were not statements of facts, and asserted specifically that the statements of McWilliams were expressions of opinion which could not be the basis for action or fraudulent representations, relying upon Davis v. Schiess, Wyo., 417 P.2d 19, 21, and cases cited therein, and 37 Am.Jur.2d, Fraud and Deceit, § 45, p. 70. Davis, however, sets out only a general rule that an expression of opinion as to value is not fraud. It is interesting to note that the cases cited in support of this proposition recognized an exception. First Nat. Bank of Cheyenne v. Swan, 3 Wyo. 356, 23 P. 743, 750, notes the exception that an expression of opinion has not, except in unusual cases, been held to be a representation of fact but does not deny the possibility thereof. McDonald v. Mulkey, 32 Wyo. 144, 231 P. 662, 668, recognizes Swan as noting an exception and mentions there is no occasion to discuss authorities that indicate an opinion may involve a statement of fact, and suggests that in doubtful cases the question of whether this representation is an opinion or statement of fact should be left to the jury. Twing v. Schott, 80 Wyo. 100, 338 P.2d 839, 843, was further cited by the court in the Davis case, and it specifically notes this general rule but that the distinction is not always definite and must depend upon the facts in each case. It is interesting to note that in that case the words "good," "adequate," and "sufficient" were held to constitute fraudulent misrepresentations although they might seem only conclusions or opinions, except in the context of that case. Burnett v. Taylor, 36 Wyo. 12, 252 P. 790, 795, noted there were circumstances under which a party might be justified in accepting an opinion as a representation of fact. It has been said:

"The foregoing rule [in connection with misrepresentations] as to expressions of opinion cannot be pushed beyond the plain reasons upon which it rests. Wherever the statement, although relat-

ing to matter of opinion, is the affirmation *of a fact*, it may be a fraudulent representation. * * *" 3 Pomeroy's Equity Jurisprudence, § 878a, p. 450 (5th Ed.).

There is authority that a misrepresentation as to the numbers of livestock a farm or ranch will support will sustain an action for fraud and is a statement of fact and not of opinion, Nichols v. Lane, 93 Vt. 87, 106 A. 592, 593; Brustman v. Dunn, 161 Wis. 306, 154 N.W. 361, 362; Schuler v. Humphrey, 198 Or. 458, 257 P.2d 865, 871.

This leaves, then, the narrow question for determination, Did the appellants herein produce sufficient substantial evidence to support the verdict?

We have heretofore recognized in cases involving appeals from judgments notwithstanding the verdict that we must construe the evidence most favorably to the appellant, and that unless there is an absence of any substantial evidence to support the verdict it should be allowed to stand, Cimoli v. Greyhound Corporation, Wyo., 372 P.2d 170, 171; Simpson v. Western National Bank of Casper, Wyo., 497 P.2d 878, 880. However, this rule must be applied with full consideration of its interrelationship with another well established rule that he who asserts fraud has the burden of proving the same clearly and in a manner which will "satisfy the mind and conscience that fraud exists," and that fraud will not be imputed if "the facts and circumstances out of which it is supposed to arise are consistent with honesty and purity of intention," Twing v. Schott, supra, 338 P.2d at 840. This can only be determined by an examination of the evidence, and if appellants met their burden of producing such evidence of fraud the action of the trial court must be reversed.

We shall first examine the prior operations of this ranch to determine if the brochure misrepresented the numbers of livestock which had been run in the past. Although the ranch had been the property of B. M. Greene or his family for a great

many years, he apparently was not available to testify. Harry Greene, a son of B. M. Greene, did testify. Greene's testimony established that in the fall of 1957 while he was running the ranch they had 246 head of cows, being 209 of his father's and 37 of his own, with 6 bulls and 129 calves, and that additionally he had 230 sheep and 5 bucks along with 10 horses. He ran comparable numbers of livestock in 1956 and 1958, which was the year he left the ranch and when Greenes sold their cattle. He further testified these numbers were fairly constant from the year 1948 through 1958 when he was acquainted with the operation of the ranch. There is no effective contradiction of this. There is considerable significance in the testimony which reveals the presence of 129 calves on these premises because the Greenes did not sell the calves immediately after their weaning but sold them as yearlings; and although the testimony gives no help as to the amount of feed which a calf would require, we cannot blind ourselves to the fact that they would require some feed and that as quickly as they became yearlings would, from the testimony, take one-half as much as a cow and calf. This certainly shows a system of operation by the Greenes of running in excess of 250 cows. The Greenes sold their cattle in 1958 and apparently these premises were leased to various persons until Larchick purchased the lands and operated this ranch from June 1964 until he sold it to Ogburn in 1968.

Larchick testified the meadows were in poor condition and that the ranch had been overgrazed when he took over the premises, which is confirmed by his testimony that in the first year he put up 250 tons of hay; that he increased the yield for the next year 50 to 75 tons, and put up 500 tons in his last year, and there were 80 to 100 tons of hay, which had not been fed, which were left over when Ogburn took possession. There is further evidence that the ranch had been overstocked during the time Greenes had not actively operated it. However, in the first year of Larchick's operation he kept 9 bulls, 225 cows, 5 pon-

ies, and 2 unbroken horses, in addition to 250 ewes and 10 bucks. In 1966 he had 9 bulls, 220 cows, 16 coming yearlings, 2 dairy cows, and 6 horses. Additionally he had 194 sheep. In the year 1967 he ran 6 bulls, 50 head of coming yearlings, 200 cows, along with 2 dairy cows and 260 head of sheep. He further testified that it was not only his opinion that the ranch could run 250 cows and 250 sheep but that he did run the "equivalence" while he was there.

Insofar as any alleged misrepresentations of McWilliams are concerned appellant makes no contention that there were any different, additional, or independent representations other than appeared in the brochure nor do we find any evidence of any additional or independent representations. Under these circumstances no separate discussion of these representations is made independent of what we have said before.

There is an amazing variance in the testimony of livestock operators called as witnesses in this case who testified as experts with reference to the amount of hay which would properly be required to maintain a cow for a winter season, these ranging from 1 ton with supplemental feed to 3 tons, with the agreement this is dependent upon the length and severity of the winter. Plaintiff Morton White confirms that the amount required varies with the winter and is dependent upon the weather and further that he had not had a mild winter while he was there, and that it had been declared a disaster area for one of these years. Plaintiff's witness Wall testified that the last two winters (the clear inference is that this refers to the winters of 1971–72 and 1972–73 as this came to trial March 20, 1973) were "unusual" and that feeding began in October rather than November, which would not be usual. White testified that this winter (1972–73) he had 275 cow units on the ranch. White further testified he had put up 500 tons of hay. If we credit the testimony of one of his experts this would feed 500 cows with supplements. If we follow the formula of another of his experts based upon one and

one-half tons it would feed approximately 333 head. If we take White's estimate it would feed 250 head under usual conditions. To demonstrate the extreme, one of his witnesses considers the 500 tons as normal feed for only 166 cows, asserting that 3 tons per year were required per cow.

What we have just mentioned above rather clearly illustrates that various ranchers manage their operations in different ways and that some are more prodigal with their feed than others. There can be no basis for charging these defendants with fraud insofar as the capabilities of this ranch to raise winter feed are concerned, dependent as this is on the scheme of operation, the length of the winter, and the weather. The yearly carrying capacity of a ranch is directly related to its capacity to produce winter feed. It may also be noted that the brochure mentions only the consistent production of 300 tons of hay.

■ One of the basic elements of fraud is the falsity of the representation of a material fact, Davis v. Schiess, Wyo., 417 P.2d 19, 21. Davis also notes the failure of proof by way of substantial evidence of the bad faith and whether the opinion expressed was defendants' real opinion. The statement of the evidence reveals that plaintiffs have not satisfied the burden required in fraud cases under the authorities set out earlier in this opinion either as to the falsity or bad faith of these defendants.

■ There can be no basis for any claim of false misrepresentation as to the hay production which states a consistent production of 300 tons when the record shows that the production in some of the years in discussion was in excess of 400 tons; nor is there any basis for any claim of fraudulent misrepresentation as to the numbers of cattle or livestock then being run by Ogburn at the time of the sale. It seems rather strange that Morton White, being worried about the carrying capacity of the ranch, and observing that the cattle were not in good condition, describing them as not "bloomy," did not make any

inquiry of either of the defendants or McWilliams as to the numbers of livestock then being run on the ranch. We do not say that plaintiffs could not rely upon representations made to them by the defendants, but they could not blind themselves to observe the readily available facts and place reliance upon such alleged misrepresentations without making a diligent inquiry of these facts, Schaffer v. Standard Timber Company, 79 Wyo. 137, 331 P.2d 611, 615; Gladstone Hotel, Inc. v. Smith, Wyo., 487 P.2d 329, 332. This is particularly true when the record shows plaintiff Morton White to have been a ranch operator of many years' experience in widely varied operations.

■ There can be no basis for any claim based upon the statement that the ranch could easily be developed to carry more animals as this is obviously an opinion as to future events and possibilities and is based upon the contingency of further development, Bushnell v. Elkins, 34 Wyo. 495, 245 P. 304, 307, 51 A.L.R. 13; In re Adoption of Hiatt, 69 Wyo. 373, 242 P.2d 214, 216.

■ In connection with the $2,000 recovery allowed for the alleged false and fraudulent misrepresentation as to the value of the tractor, we find that the plaintiff Morton White bases his claim upon this statement: "Bill said one like that costs $11,000." It is hard to construe this as any representation of value. The testimony of McWilliams and of Ogburn clarifies and supplements this statement, and puts it into the proper context when McWilliams says the statement was that it would cost so much *if you would buy it right now*. Nor is the testimony of Ogburn, which was to the same effect, a representation of value. There is further a reasonable explanation of this statement when it develops from the undisputed testimony that this particular model of tractor had been discontinued by the company in 1966 and one of the newer models comparable thereto was listed at over $11,000. Appellants do not attempt any rebuttal of either McWilliams'

**1172**

or Ogburn's testimony in this regard, which we do not find inconsistent with the representation that Ogburn is alleged to have made to White. It appears significant that in answer to a direct question whether White had been told the tractor had cost anyone $11,000, he replied, "intimation is all." In light of the fact that appellants make no attempt to further explain or to contradict any of this testimony, it is our view that this utterly fails to comply with the standard of proof required in fraud matters as discussed before, and being equally consistent with honesty cannot be the basis for recovery, Twing v. Schott, 80 Wyo. 100, 338 P.2d 839, 840; Fallon v. Wyoming State Board of Medical Examiners, Wyo., 441 P.2d 322, 326, rehearing denied 443 P.2d 135.

The judgment of the trial court is therefore affirmed.