Jack W. WILHELM, Robert T. Schneider, and Josephine M. Schneider, Appellants (Plaintiffs),

v.

Charles W. LAKE and Dixie L. Lake, Appellees (Defendants).

No. 5386.

Supreme Court of Wyoming.

June 17, 1981.

Richard W. Day of Goppert, Day & Olson, Cody, James H. Sperry, Worland, and James M. Guill, Cody, signed the brief and appeared in oral argument for appellees.

George M. Apostolos and B. J. Baker of Brown, Drew, Apostolos, Massey & Sullivan, Casper, signed the brief, B. J. Baker, Casper, appeared in oral argument for appellants.

Before ROSE, C. J., RAPER, THOMAS, ROONEY and BROWN, JJ.

BROWN, Justice.

Appellants, plaintiffs below, appeal from a jury verdict denying recovery based upon alleged false and fraudulent representations made to them at the time they purchased defendants-appellees' ranch. Appellants assert that the disposition below should be reversed for the following reasons:

 I. Appellants were not afforded reasonable opportunity to cross-examine ranchers called by appellees, as expert witnesses, to testify that in their opinion the ranch was suitable for a cow-calf operation.

 II. The court erred in admitting testimony relating to the character and reputation of appellees over the objection of appellants that such testimony was irrelevant.

III. There is no substantial evidence to support the verdict of the jury.

We will affirm.

Appellants purchased the ranch in question from appellees, in January 1976. Appellants allege that prior to their purchase of the ranch, appellees made the following misrepresentations:

"1. The ranch was suitable for running a cow-calf operation;

"2. It had a carrying capacity of 425 to 450 head of breeding cows and calves on a year-round basis;

"3. The ranch had a BLM permit for 1,761 animal unit months and, by implication, there was grass available to sustain this number of animal unit months, and the owner of the ranch was entitled to use all these animal unit months;

"4. That 317 acres were under cultivation as irrigated farm land; and

"5. The ranch had 4,000 acres of mountain land that was good summer pasture for a cow-calf operation."

Appellants further allege that they reasonably relied on these false representations and were damaged in the sum of $361,798.28.

Appellants contend that the ranch did not contain as many irrigated acres as represented; the upper ranch was not good for mountain pasture; the ranch had been overgrazed and was infested with loco weed and other noxious weeds. Appellants further allege that when they attempted to run cattle on the upper ranch, the cattle suffered sickness and severe calf loss.

Appellees deny making false representations, that appellants relied upon appellees' representations and that appellants were damaged. Appellees also claim that they were unaware of appellants' complaint until January 1979. Appellants commenced this action on May 7, 1979, which was subsequently tried before a jury.

## CROSS-EXAMINATION OF RANCHERS CALLED BY APPELLEES

Appellees as part of their defense called Hugh Vass, a Hot Springs, Wyoming, rancher who testified that, based on his observation, the ranch in question was suitable for a cow-calf operation. Appellees' counsel asked:

"Q. Mr. Vass, as the man who has observed that upper range of the Cottonwood Creek Ranch over a number of years, will you state to the jury whether or not you consider it fit for a cow-calf operation?"

Mr. Vass answered:

"A. Well, I think it is with a little bit of discretion on it, I have used it."

On cross-examination, counsel for appellants attempted to go into Mr. Vass' knowledge of appellees' success or lack of success in using the ranch for a cow-calf operation. Counsel inquired:

"Q. About what type of calf crop do you [Mr. Vass] get?"

Appellees' counsel objected on the basis that the question went beyond the scope of direct examination. The objection was sustained.

Appellants' counsel then asked:

"Q. Do you know the type of calf crops that the Lakes [appellees] have had on their range?"

Again, an objection was sustained. At this juncture, appellants' counsel made an offer of proof. In chambers, the offer of proof consisted mainly of counsel's argument as to why this type of cross-examination should be permitted. Counsel didn't advise the court what the cross-examination would reveal. In a strict sense, this was not an offer of proof. 75 Am.Jur.2d Trial § 128; *Vanover v. Vanover*, 77 Wyo. 55, 307 P.2d 117, 62 A.L.R.2d 931 (1957). Counsel cannot be faulted at this time, however, because he didn't know what Mr. Vass would say. He was probing.

Appellees called John Herrin, also a Hot Springs County rancher. He was asked if he knew of any reason why the Lake range and any other range in the area were not suitable for a cow-calf operation. Mr. Herrin said:

"A. No. Everybody runs them. So, I guess it's a matter of what you want to run, but I think it's all right for cow and calf."

On cross-examination appellants' counsel asked:

"Q. Are you familiar with the economics or the actual cattle losses on the Lake Ranch?"

To this inquiry the court sustained an objection on the basis that the question went beyond the scope of direct examination. No offer of proof was made; however, the court indicated that it would consider the prior offer of proof to include the cross-examination of Mr. Herrin.

■ The Wyoming Rules of Evidence make a distinction between the opinion evidence of lay and expert witnesses. Rule 701, W.R.E., provides:

If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue."

Rule 702, W.R.E., provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion * * *."

Appellants contend that the court's restriction on cross-examination of Vass and Herrin was prejudicial error. In support of their contention, appellants rely upon *Chrysler Corporation v. Tordorovich*, Wyo., 580 P.2d 1123 (1978).[1] However, Mr. Vass

---

1. This court stated in *Chrysler Corporation*, supra, 580 P.2d at 1133:

"* * * the proper rule with respect to cross-examination designed to test his expertise is that it is in no way limited by his testimony on direct examination. Having offered his expert opinion the expert witness exposes himself to interrogation which ordinarily would have no place in the cross-examination of a factual witness, but the expert exposes himself to the most searching kind of investigation into his qualifications, *the extent of his knowledge and the reasons for his opinion, including the facts and other matters upon which it is based.* * * *" (Emphasis added.)

and Mr. Herrin were not expert witnesses in the sense of the expert witness in *Chrysler Corporation*, supra. Their testimony was not based upon facts so technical or specialized that the jury required the aid of a person with special knowledge or skill to understand. Mr. Herrin's opinion, for example, was based upon the fact that everyone in the area ran a cow-calf operation.

■ Assuming arguendo that Mr. Vass and Mr. Herrin were experts in the context of *Chrysler Corporation*, supra, appellants nevertheless have not been prejudiced. Testimony on cross-examination with respect to Mr. Lake's cow-calf operation was initially barred at the front door by an objection but appellants came in the side door when substantially the identical question was asked. On further cross-examination, appellants' counsel asked Mr. Vass if his opinion was based upon observing Mr. Lake run cows and calves on the range in question. Mr. Vass said, "No." This answer in effect answered counsel's prior question concerning Mr. Vass' knowledge of appellees' calf crop and accomplished what appellants proposed to show in their offer of proof.

■ In addition, Mr. Vass and Mr. Herrin were not called as expert witnesses nor was there any attempt to qualify them as such. The foundation for the opinions given by Vass and Herrin was thin. In forming their opinions, the witnesses relied upon their experience in the general area and their knowledge of the Lake ranch. Appellants, however, did not object to the opinions rendered by these witnesses, nor did appellants move to strike the opinions because of insufficient foundation. As this court has often held, we will not consider an error unless there was an objection at trial or unless the error amounted to plain error. *Edwards v. State*, Wyo., 577 P.2d 1380, 1385 (1978). We find no basis for plain error; therefore, we are precluded from considering the sufficiency of the foundation.

We find, therefore, that the court did not commit prejudicial error in restricting the cross-examination of Mr. Vass and Mr. Herrin.

## TESTIMONY RELATING TO CHARACTER AND REPUTATION OF APPELLEES

As part of their defense, appellees called several witnesses and questioned them about the reputation of appellee Charles Lake for truthfulness or untruthfulness. The witnesses were permitted to answer over the objection of appellants. Appellants contend that the court's ruling was erroneous.

Rule 404(a), W.R.E., provides:

"* * * Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:

"[Citing examples not relevant to this case.]"

Without question Rule 404(a) provides that a party cannot bolster its case by introducing evidence of character traits. However, in this case, character evidence was not offered for that purpose.

■ The first witness was Mr. Lake, called by appellants as an adverse witness. Mr. Lake was questioned about his 1976 income tax return and income tax fraud was suggested. Therefore, this type of questioning was an attack upon Mr. Lake's truthfulness and honesty. Even appellants' counsel stated to the court that the only reason the 1976 tax return was brought up was "to show that he [Mr. Lake] is not the honest person that he is contending to be." Therefore, appellants put Mr. Lake's character in issue.

After a witness' truthfulness has been attacked, evidence may be produced as to the witness' truthfulness. Rule 608(a), W.R.E., provides:

"(a) *Opinion and reputation evidence of character*—The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evi-

dence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise."

Character witnesses were not produced by appellees to prove that Mr. Lake acted in conformity with his general character in his dealings with appellants, as prohibited by Rule 404(a), supra, but they were called to show his reputation for truthfulness, as permitted by Rule 608(a), supra, after Mr. Lake's character had been placed in issue, 98 C.J.S. Witnesses, § 521(a), p. 464; 4 Jones on Evidence, § 26:25 (6th ed. 1972).

 The trial court's ruling on the issue of character witnesses was a discretionary ruling and will not be disturbed on appeal except for a clear showing of abuse. *United States v. Medical Therapy Sciences, Inc.*, 3 F.Evid.Rep. 529, 583 F.2d 36 (2d Cir., 1978), cert. denied 439 U.S. 1130, 99 S.Ct. 1049, 59 L.Ed.2d 91 (1979); *United States v. Herzberg*, 2 F.Evid.Rep. 454, 558 F.2d 1219 (5th Cir., 1977), cert. denied, 434 U.S. 930, 98 S.Ct. 417, 54 L.Ed.2d 290 (1977). Appellants have not met their burden to demonstrate abuse. *Nimmo v. State*, Wyo., 603 P.2d 386 (1979). We find that the character witnesses were properly permitted to testify.

In addition, appellants point to appellees' summation in an attempt to illustrate that appellees did in fact use character evidence to prove that Mr. Lake acted in conformity with truthfulness when he dealt with appellants. A fair reading of that segment of appellees' closing argument suggests that appellants' contention is correct; however, no objection was made by appellants. During the examination of witnesses the trial judge admitted appellees' character evidence on the basis that Mr. Lake's character had been attacked by appellants. If appellants felt that appellees in summation were using that testimony for a prohibited purpose, they could have objected and asked for an instruction explaining the limited purpose of the character evidence. Appellants made no such objection.

"In order to predicate error thereon, the courts generally require that an objection be made at the time of the improper statement, so that an opportunity may be given to the attorney making the misstatement, and to the court, to rectify the damage. * * *" 75 Am.Jur.2d, Trial, § 315, pp. 387–388.

In *State Highway Commission v. Peters*, Wyo., 416 P.2d 390, 396 (1966), we said: " * * * attorneys who are confronted with conduct on the part of opposing counsel, which is considered improper and prejudicial, cannot escape responsibility for making objections and calling upon the trial judge to correct erroneous impressions as they are made.

"We have repeatedly said it is incumbent upon counsel to object to the conduct of opposing counsel and to give the trial court an opportunity to instruct the jury to disregard the same or otherwise correct the record, before alleged prejudicial error arising therefrom can be considered on appeal. *Webber v. Farmer*, Wyo., 410 P.2d 807, 809; *Edwards v. Harris*, Wyo., 397 P.2d 87, 95."

See also *Combined Insurance Company of America v. Sinclair*, Wyo., 584 P.2d 1034, 1050 (1978); and *Routh v. State Highway Commission*, Wyo., 402 P.2d 706 (1965).

It is our experience that most lawyers will go as far as they can and will continue to do so until restrained by a proper objection. However, a trial judge does not have a duty, sua sponte, to inject himself into appellants' case, admonish appellees' counsel, and give an appropriate instruction.

The court did not commit prejudicial error in allowing evidence concerning the character of Charles W. Lake.

### SUFFICIENCY OF EVIDENCE

In appellants' third and final argument, they assert that the verdict was not supported by substantial evidence. This segment of appellants' argument also includes alleged prejudicial comments by the court and erroneous rulings.

This court has often repeated the appellate rules that must be followed when con-

sidering the question of sufficiency of the evidence. As this court stated in *Douglas Reservoirs Water Users Association v. Cross*, Wyo., 569 P.2d 1280, 1284 (1977):

" * * * an appellate court must assume evidence in favor of a successful party to be true, leave out of consideration the conflicting evidence of the unsuccessful party and give the evidence of the successful party every favorable inference which may be reasonably drawn from it. * * * " Id., 569 P.2d at 1283.

However, the rule relating to conflicting evidence:

" ' * * * does not relieve an appellate court of its duty of analyzing the evidence in the light of reason and human experience and giving consideration to the motives and propensities which tend to influence or prompt human action, in an effort to solve the question as to whether the judgment is reasonably and substantially sustained by the evidence. * * * '

" 'There must be more than a conflict of mere words to constitute a conflict of evidence. The contrary evidence must be of a substantial character, such as reasonably supports the judgment as applied to the peculiar facts of the case.' * * * *Steadman v. Topham*, 80 Wyo. 63, 77, 338 P.2d 820, 825 (1959)."

Appellants allege that appellees misrepresented that the ranch was suitable for a cow-calf operation and that there was insufficient evidence to support a contrary verdict. In support of this contention they point to the following facts: that the evidence indicates that appellants never had a satisfactory calf crop; that such representation was made when appellees had already decided to change from a cow-calf operation to a yearling operation; that the ranch was overgrazed and appellants could not be supporting as many animal units as they claimed in the fact sheet; and, that the mountain was infected with loco weed because of overgrazing.

It cannot be denied that there is testimony in the record to support these allegations; however, there is also ample testimony in the record to sustain the ver-

dict. Ranchers on neighboring lands testified that the ranch was suitable for a cow-calf operation and that practically everyone else on adjoining ranches ran the same type of operation. A ranchhand who had worked for years in the surrounding area testified that he did not know of a ranch in the area that did not have loco weed. There is further testimony indicating that the ranch was neither overstocked nor overgrazed when appellees owned the ranch. Lake testified that he had actually run 500 animal units on the ranch. A real estate fact sheet stated that the ranch was "owner rated at 425—450 cow-calf units year around."

In addition, Mr. Lake does not deny that he often had a very low calf crop; however, Mr. Lake testified that he told appellants about the problems that he had experienced with his calf crop on at least three or four occasions, and initially appellants did not ask any questions about the problems that Lake had experienced because they were still considering running a sheep operation on the ranch.

It appears that appellants are asking this court to weigh the evidence and determine the credibility of the witnesses. It is an elementary principle of law that we cannot do this on appeal. *Madrid v. Norton*, Wyo., 596 P.2d 1008, 1117 (1979); *Fitzgerald v. State*, Wyo., 601 P.2d 1015 (1979); *Tucker v. State*, Wyo., 594 P.2d 470 (1979); *Aragon v. State*, Wyo., 627 P.2d 599 (1981). There is ample testimony in the record to sustain the verdict.

Both parties quote *White v. Ogburn*, Wyo., 528 P.2d 1167 (1974), in support of their position. In the case at bar, as in *White*, appellees represented to appellants the carrying capacity and hay production of the ranch based upon appellees' prior experience with the ranch. As in *White*, appellees had run, over the years, as many animal units as they represented to appellants that the ranch would support. As in *White*, such evidence failed to satisfy the burden required in proving fraud as to either the falsity or bad faith of appellees. In *White* the court observed that appellant had had many years of experience in widely varied ranch operations. While *White* and the

case at bar have many similarities, the former turned on insufficiency of evidence of actionable fraud rather than resolving conflicting evidence. Appellants attempt to distinguish *White* on the basis that appellants in the case at bar were inexperienced.[2] This observation was not indicated as determinative of the issue but only to strengthen the court's statement that appellees "could not blind themselves to observe the readily available facts and place reliance upon alleged misrepresentation without making a diligent inquiry of these facts." *White v. Ogburn,* supra, p. 1171; *Gladstone Hotel, Inc. v. Smith,* Wyo., 487 P.2d 329, 332 (1971); *Schaffer v. Standard Timber Company,* 79 Wyo. 137, 331 P.2d 611, 615 (1958).

Finally, appellants direct the court's attention to several alleged prejudicial matters: improper remarks in appellees' opening statement; the trial court complimenting opposing counsel or commenting on the evidence and certain erroneous rulings; a witness' testimony on the ultimate issue; and the calling of a witness by appellees not listed in the pretrial order. It is noted in passing that the trial judge gave an instruction designed to cure the improper remark in the opening statement. The court also admonished the jury to disregard certain testimony. The alleged compliment to counsel was characterized differently by appellees' counsel. He characterized these remarks as "biting and sarcastic and that he did not feel flattered or uplifted in the eyes of the jury."

We have not set out nor analyzed in detail the numerous alleged prejudicial matters listed by appellants in argument number III. The broad and general attack in this segment of appellants' brief does not lend itself to a careful scrutiny. Appellants have not aided us by persuasive argument nor cited specific quotations from cases in support of their contention. Appellants have alleged prejudicial matters generally and have left it up to us to determine why these matters are prejudicial. In the last paragraph of appellants' brief, counsel

seems to concede that none of the matters, set out in argument number III, standing alone are sufficiently prejudicial to require reversal. He then goes on to say, "appellants, however, call the attention of the court to these matters so that the court will be aware there were many errors that caused the verdict of the jury not to be based upon the substantial evidence but to be based on prejudice."

This may be another way of saying that each error standing alone would not require reversal but the cumulative effect of numerous errors would require reversal. This is a difficult concept to demonstrate to the court and counsel has made no effort to show that appellants were prejudiced by the cumulative effect of alleged erroneous matters. Assuming arguendo that the court did err in some of its rulings, such error appears to be harmless and appellants have failed to show that the jury's verdict was a result of these erroneous rulings.

Affirmed.

---

**2.** Whether appellants were experienced or inexperienced is not determinative of the issue. However, there was evidence that they were experienced, hard working farmers and sheep ranchers. We can only speculate whether or not the jury deemed experience or the lack thereof significant.