Katherine BLOHM, Administratrix of the
Estate of Robert Frederick Blohm,
Deceased, Appellant,

v.

CARDWELL MANUFACTURING CO.,
Inc. a Kansas corporation,
Appellee.

CARDWELL MANUFACTURING CO.,
Inc., a Kansas corporation,
Appellant,

v.

Katherine BLOHM, Administratrix of the
Estate of Robert Frederick Blohm,
Deceased, Appellee.

Nos. 8373, 8628.

United States Court of Appeals
Tenth Circuit.

July 3, 1967.

Rehearing Denied Aug. 24, 1967.

Ernest Wilkerson and Jerry A. Yaap, Casper, Wyo., for Katherine Blohm, etc.

Byron Hirst, Cheyenne, Wyo. (James L. Applegate and Richard V. Thomas, Cheyenne, Wyo., on brief), for Cardwell Mfg. Co., Inc.

Before MURRAH, Chief Judge, LEWIS, Circuit Judge, and CHRISTENSEN, District Judge.

MURRAH, Chief Judge.

This is an appeal from a judgment on a Wyoming jury verdict denying recovery in a wrongful death action based upon the alleged negligent design and manufacture of an oil well drilling rig. The only question is whether the trial court erroneously excluded evidence of competitive and comparative design and manufacture tendered to prove the critical issue of negligence.

The operative facts are that the deceased, Robert Blohm, was a derrick man on a jackknife-collapsible "Travelrig" manufactured and sold by appellee-Cardwell Manufacturing Company, Inc., to Blohm's employer, Capshaw Well Servicing Company. This rig is a mobile unit designed to be made operational by positioning the truck carrier at the well site, jackknifing the entire derrick into a vertical position, then hydraulically telescoping the upper portion into place from its nest inside the base. The extended derrick is locked into place and stabilized by activating locking pins which are automatically inserted in matching holes in the top and bottom sections of the derrick. "Spring loaded safety locks" are inserted into matching grooves in the locking pins, thus securing them in their locked position.

On the date of the accident the Capshaw crew proceeded to a designated well site in Wyoming and commenced to "rig up". The rig was positioned, the derrick raised, and operations begun. While a tension of some 26,000 lbs. was being exerted against the crown of the derrick, the top section collapsed into the bottom section, apparently because the locking pins had failed to insert into their holes due to a slight twist in the rig. Blohm was working somewhere in the derrick and was fatally injured.

On trial appellant-administratrix sought to prove that Blohm's death was the result of the negligent design of the Cardwell rig in that it failed to allow sufficient tolerance for the insertion of the locking pins and failed to install adequate and proper safety devices to warn in the event the locking pins failed to seat themselves and thus secure the upper portion of the derrick in its extended position.

To prove her case of negligent design and manufacture, the widow-administratrix offered the testimony of two witnesses employed by manufacturers of rigs similar to the Travelrig to show "competitive design" used by their respective companies to hold the top portion of a derrick in place during operation. She also offered comparative design evidence by the testimony of an expert witness with an accompanying demonstrational model " * * * to [show] what might have been done safely and cheaply to have made this a safer rig." Cardwell objected to the admission of the proffered evidence, as indeed it does here, for the reason that "no proper foundation has been laid" and further that the decision of this court in Marker v. Universal Oil Products Co., 250 F.2d 603, clearly makes such evidence inadmissible. The jury was excused and in the ensuing colloquy counsel for the administratrix stated his position in no uncertain terms to the effect that this case is clearly distinguishable from Marker; that in admitting and submitting the proffered evidence to the jury it should be told that evidence of competitive and comparative design was not admitted " * * * as being necessarily evidence of negligence", but where as in this case, " * * * the whole essence of which is a design deficiency", the evidence is

received and should be considered "Not necessarily [as] the ultimate, not necessarily a perfect, foolproof insurance policy, but [that] this simple, feasible thing could have been done which would have lessened the likelihood of this man's death. I don't know of any other way to approach a case of this kind except to be permitted to show to the court and jury what feasible, realistic, economical methods could have been accomplished which would have made this rig safer." The trial judge excluded the testimony of the two lay witnesses as to competitive design, and consistent with this ruling restricted the expert witness "to purely opinion testimony" concerning defective design of the Travelrig. He thus excluded any expert testimony of comparative design as demonstrated by the model as to how the Travelrig could have been more safely designed and manufactured. In so ruling, the trial court relied squarely on the Marker case. As we shall see we think the court's reliance on Marker was misplaced, and that the excluded evidence was admissible for the very purposes stated by administratrix's counsel in his argument to the trial court in support of admissibility.

▆ In Brigham Young University v. Lillywhite, 10 Cir., 118 F.2d 836, we stated the rule to be that evidence of this nature was inadmissible to establish a legal standard of care; for the law fixes the standard of care as ordinary care. At the same time, we sought to make it clear that such evidence is admissible to be considered by the jury in determining the ultimate issue of negligence based on the legal standard of ordinary care. See also Denning Warehouse Company v. Widener, 10 Cir., 172 F.2d 910, 913, 13 A.L.R.2d 669. As Mr. Justice Holmes put it, "What usually is done may be evidence of what ought to be done, but what ought to be done is fixed by a standard of reasonable prudence whether it is usually complied with or not." See Texas & Pacific Railway Company v. Behymer, 189 U.S. 468, 23 S.Ct. 622, 47 L.Ed. 905, cited and quoted in Atchison, Topeka and Santa Fe Railway Company v. Parr, 96 Ariz. 13, 391 P.2d 575, 578. In a slightly different context the Eighth Circuit has recently stated that what is customary is "* * relevant and admissible in evidence of negligence [but] not conclusive * *". Colorado Milling & Elevator Company v. Terminal Railroad Ass'n, 350 F.2d 273, 278. The subject is exhaustively treated in II Wigmore, 3rd ed., Sec. 461. This reasoning is equally applicable to evidence of comparative design, i. e., evidence of what might be economically and feasibly done as tending to show what ought to be done in the circumstances. Stone & Webster Engineering Corporation v. Melovich, 9 Cir., 202 F. 438; Daniels v. County of Allegheny, D.C., 145 F.Supp. 358.

▆ In Lillywhite, we committed to the trial court a practical discretion in ruling on the admissibility of evidence of this kind. The trial judge must be free to determine whether the proffered evidence would be such as to aid the jury in deciding the ultimate issue of negligence, or whether its cogency in that respect is outweighed by the likelihood that it would tend to confuse rather than assist. But Judge Kerr did not exclude the evidence because it was confusing, but rather on the basis of language in Marker, supra, which he interpreted to exclude all such evidence. In so ruling he quoted a passage from Marker which we took from Day v. Barber-Colman Company, 10 Ill.App.2d 494, 135 N.E.2d 231, to the effect that "* * * although other possible designs, whether in use in the industry or not, might be conceived which would be safer, * * * evidence as to what is thought by some to be a safer design or method or product is not admissible." See Marker, supra, 250 F.2d p. 605. Taken out of context, this language does tend to support the trial judge's ruling. Marker is, to be sure, a defective design case—it was alleged that the tower in question was defectively designed and constructed because of a failure to include certain safety features in the form of escape ways. The stipulated evi-

dence indicated that the suggested improvement was economically unfeasible. We held, consistent with well settled law, that " * * * neither designer nor manufacturer has a legal duty to adopt or produce a process or product incorporating only features representing the ultimate in safety." Id. p. 605, citing Day v. Barber-Colman Company, supra. But, we were concerned with the legal duty owing in cases of this kind, not with the admissibility of comparative and competitive evidence bearing upon the factual question whether in a particular case the challenged product measured up to the legal standard of ordinary care.

We think the evidence should have been admitted and the jury instructed that it was competent, not to prove a legal standard of care, but to show what is being done and what might feasibly be done as evidence of what ought to be done in the exercise of ordinary care.

■ On the adequacy of foundation for the proffer of proof, it is sufficient to say that the proffer itself laid the foundation for an informed ruling on admissibility. Moreover, the extended argument preceding the proffer left no doubt of the purposes for which the testimony was offered as bearing on the question of competency. The trial court had no difficulty whatsoever concerning the adequacy of foundation for the evidence relating to competitive design, nor the expert testimony of comparative design.

The judgment is reversed for new trial in accordance with the views expressed herein, with costs allowed to Blohm.

In No. 8628 Cardwell has cross-appealed from the order of the court denying Cardwell's motion to require Blohm to designate for inclusion in the stenographically reported transcript, certain portions of the trial proceedings which were not designated by Blohm and which Cardwell contended in the trial court were pertinent to the consideration of the questions presented in the principal appeal No. 8373. When the trial court refused to require Blohm to designate the requested portions of the proceed-

ings, Cardwell designated them. These portions were apparently transcribed at Cardwell's expense and made a part of the transcription of the proceedings. We are now asked to reverse the trial court's order and direct a judgment for the cost of these additional portions of the transcript in the sum of $879.70.

■ It is sufficient for the purposes of this appeal to say that inasmuch as the judgment in No. 8373 is reversed and all costs of the appeal are allowed to Blohm, Cardwell is not entitled to recover any costs. See Rule 30(c), Revised Rules of the United States Court of Appeals for the Tenth Circuit. The cross appeal is therefore moot.

DAVID T. LEWIS, Circuit Judge (dissenting).

I must respectfully dissent from the opinion of the court, not because I disagree with its basic premise that evidence of what is customary, usual or habitually done is admissible to probe the ultimate question of what should be done, but because I fail to see that such rule has application to the case at bar when projected against the specifics of the case.

Although this cause was pleaded and tried and considered by the jury upon multiple claims of negligence, the appellate question preserved is the rejection of certain evidence by the trial court that appellant asserts was relevant to her claim that the subject rig contained a basic negligent design causing a malfunction of the machinery resulting in the damage for which recovery is sought.

As indicated in the main opinion, this accident occurred when the extended section of the rig collapsed into a reverse telescope because the locking pins failed to insert completely into position and provide the stability necessary for the safe use of the machinery. Appellant sought to prove the negligent design of this feature of the machine. And although the main opinion seems to indicate that the trial court rejected evidence of custom or customary usage in support

of such proof, I do not so read the record.

What the trial judge did do was reject evidence, offered through the media of lay witnesses, of the overall design and method of functional operation of two competitive rigs, not to show an accepted custom or standard in the industry but, as the proffer specifically stated: "[T]he proffered evidence would indicate different opinions, different mechanics than used on the Cardwell rig and, it is submitted, would indicate safer design." Since it seems well established both by the law of this and other circuits that the existence or potential existence of a "safer" design is not the issue in a claim of defective design, I think this evidence was properly rejected by the court. Marker v. Universal Oil Products Co., 10 Cir., 250 F.2d 603; Mitchell v. Machinery Center, Inc., 10 Cir., 297 F.2d 883; Gossett v. Chrysler Corp., 6 Cir., 359 F.2d 84. Although the absoluteness of this view as a rule of evidence has received in one instance some severely qualified and hesitant academic criticism,[1] the practicalities of trial would seem to overwhelm the validity of such criticism. Consideration of competitive design, as it was here offered, would lead only to a battle of the experts as to overall quality of competing products and divert consideration of the fact finder from the true issue, i. e., whether the suspect design was so defective as to constitute negligence under accepted standards of prudent conduct. And upon this issue the trial court allowed appellant's expert to testify fully.

Professor Robert Sutherland, head of the Mechanical Engineering Department of the University of Wyoming, testified as a witness for appellant and expressed his view that the Cardwell rig was defectively designed, giving his reasons therefor and explaining how, in his opinion, the defect could and should be corrected. He stated, in effect, that the tolerance between the Cardwell pins and the receiving holes was insufficient and could be corrected by increasing the tolerance through tapering. This testimony was received over appellee's objection and in compliance with the view of the trial court expressed as follows:

"The Court: Overruled. Professor, I will make this explanation for you. Law is an abstract science, in contrast to the exact science which you have studied, and I will permit you to testify to anything which, in your opinion, would indicate that the original design and manufacture of this particular machine was defective. Now, we all know, if I may elucidate a minute, that all mechanical equipment can be and often is improved upon every year, so we can't get into that realm, and I will let you confine your testimony to wherein this particular machine was defective in its design, if that is your opinion. Then you can give your reasons why."

I find no error in the court's ruling in this regard, and the issue of negligent design was thus considered and rejected by the jury.

Finally, the main opinion mentions the exclusion from evidence of a model prepared by Professor Sutherland and states that the witness was restricted "to purely opinion testimony." Although the record reveals that such a model existed I find nothing in the record to indicate it was ever offered or specifically rejected as an exhibit. Be that as it may, the use of demonstrative evidence as an illustrative aid to an expert's testimony is a matter of discretion for the trial court.

I would affirm.

---

1. Noel, Manufacturers Negligence of Design or Directions for Use of a Product, 71 Yale L.J. 816, 850–53 (1962).