Jack MAXTED, Appellant
(Plaintiff below),

v.

PACIFIC CAR & FOUNDRY COMPANY,
a corporation, et al., Appellees
(Defendants below).

No. 4358.

Supreme Court of Wyoming.

Oct. 30, 1974.

Mayne W. Miller and John W. Burk, Casper, for appellant.

R. R. Bostwick, Murane, Bostwick, McDaniel, Scott, Greenlee & Owens, Casper, for appellees.

Before PARKER, C. J., and McEWAN, GUTHRIE, McINTYRE, and McCLINTOCK, JJ.

Mr. Justice GUTHRIE delivered the opinion of the court.

Plaintiff, appellant herein, filed his amended complaint, containing four counts, seeking recovery against these defendants, and appeals from the judgment denying his recovery.

This claim arose from an accident occurring on August 30, 1968, upon the highway between Burgess Junction and Ranchester, Wyoming. Plaintiff was the driver of a logging unit consisting of a tractor and trailer, and while proceeding upon this road, in order to avoid a car which had intruded into his traffic lane and while on a slight curve, pulled the tractor to the extreme right side of the road. The trailer was loaded with logs and the right rear wheels of the trailer went off the road and as a result the driver lost control of the unit, and after a "jack-knifing" occurred the truck rolled over, thereby injuring the plaintiff. Plaintiff filed this suit against Pacific Car & Foundry Company, as manufacturer of the tractor, and Peterbilt Truck Sales & Service and Chopping Motors, Inc., as distributors of the truck. Fruehauf Company is joined as a manufacturer of the trailer. The record shows the trailer was designed or built in 1963 and the tractor in 1967.

The amended complaint in Counts 1 and 2 asserts a claim of negligent design and · bases this claim upon both warranty in the first count and strict liability in the second count, and as a basis therefor alleges the design defect to be that of a failure to provide "an adequate roll-bar and the padding necessary" so that the cab would not have been crushed in and upon plaintiff, nor would he have been injured in that manner if these had been provided. Upon the trial of these two counts the jury returned a verdict for the defendants and judgment was entered thereon.

Counts 3 and 4 were based upon a claim of negligent design, alleging in summary the failure to place a device with which the driver could jettison the trailer or the load upon this unit in the event of such emergency. The first of these counts asserted the theory of warranty and the second was under that of strict liability. However, in both instances this matter was presented upon the theory of strict liability without objection of plaintiff.

Prior to the trial the court entered a partial summary judgment against defendants on Counts 3 and 4 and ordered that no mention be made of or reference be made to any facts or evidence in support thereof during the trial.

The undisputed facts will be sketched from the affidavits and depositions on file at the time the trial court made this disposal. No attack is made upon the coupling device or method used to connect the tractor and trailer at the time of the sale, which is significant.[1] No suggestion appears in the evidence that this was any different or less safe than that employed on all such units at that time. No suggestion is made that this in any manner violated any statutory or recognized standards, or any Interstate Commerce Commission or. other safety regulations. No suggestion is made that any such units had ever been equipped with any such device or that the "jettison device" was employed in any

---

1. 2 Harper and James, The Law of Torts, § 28.12, p. 1560 (1956), suggests the burden of the plaintiff to show the injury resulted from the condition of the product.

manner in any part of the trucking industry.

Appellant's experts, in their depositions, concede that such device was not employed in the industry nor had they ever heard it suggested or seen any such device. Kelsey, a trucker with much experience in hauling logs, confirms this. He further stated that he wanted the same type coupling as here because he considered it the safest. Although Cady by deposition stated he believed such device could be designed and produced, he had not completed his studies in that field. Appellant's sole support for his position rests in the deposition of the expert Feder, who also concedes that he had never heard or thought of such device until inquiry was made by a lawyer of plaintiff sometime in April 1972 and has never seen such device being used, although he has inspected other logging trucks. The thrust of his entire testimony must be considered upon the background of an answer appearing in his deposition:

> "The challenge, if you please, was whether or not there was a conceivable way to develop an original work that would effect the separation of these components."[2]

This statement in and of itself strongly suggests the fact that this was an entirely new idea and obviously not available in 1967—some five years earlier.[3]

 Plaintiff relies upon the drawings of such a device and a small model to demonstrate its operation, but no prototype has ever been constructed nor has it ever been installed on any trucking unit. To apparently strengthen or cure this lack of proof appearing in the depositions appellant filed an affidavit from Feder, setting out that in his professional judgment "in the year 1963 and before it was feasible and well within the state of the·art for the breakaway device he has testified to in his

deposition to have been installed on tractor-trailer logging units similar to the one involved herein." If categorical assertions of ultimate facts without supporting evidence could be used to defeat summary judgment this procedure would have no viability and would be contrary to the philosophy of Rule 56(c), W.R.C.P., and Clouser v. Spaniol Ford, Inc., Wyo., 522 P.2d 1360, 1363. We have heretofore held the whole purpose of summary judgment would be defeated if the case could be forced to trial by a mere assertion that an issue exists, McCamon v. Darnall Realty, Wyo., 444 P.2d 623, 625; and that a party may not rely upon conclusions nor can they be employed in disposing of a motion for summary judgment, McClure v. Watson, Wyo., 490 P.2d 1059, 1061–1062.

Appellant raises two questions in this appeal. First, the propriety of the grant of summary judgment and accompanying grant of a motion in limine as to certain evidence which might be produced, and second, the question of the propriety of an instruction which was refused and is hereinafter set out. The issues are extremely narrow and this decision will be based upon the narrow factual situation in this case. The brief and argument and authorities cited appear to be an attempt to elicit or at least tempt the court to articulate and recognize certain general propositions in connection with product liability cases in this State. This is particularly inappropriate because of the fact that these are not directly posed nor completely argued and a careless or misunderstood word or phrase might inhibit the orderly and proper growth of this field of the law, which is dynamic and expanding.

## SUMMARY JUDGMENT

 The briefs and arguments herein tend to confuse or overlook the dual requirement for any recovery in negligence

---

2. It is suggested in his deposition that this may be patentable, and this would require "novelty, utility and unobviousness," Application of Fay, 146 U.S.P.Q. 47, 347 F.2d 597, 599, 52 C.C.P.A. 1483.

3. Because of our disposal hereof we make no distinction between the year in which the trailer was designed and built and the tractor, but accept the latter date.

cases. This is stated most simply and understandably in Prosser, Law of Torts, § 37, p. 205 (4th Ed.):

"* * * Before any duty, or any standard of conduct may be set, there must first be proof of facts which give rise to it; and once the standard is fixed, there must be proof that the actor has departed from it. * * *"

Until there is some establishment by evidence of a standard of conduct or duty, there can be no question of "conflict of material facts." Recovery for negligence rests upon a legal duty owed by defendant to plaintiff, Brubaker v. Glenrock Lodge International Order of Odd Fellows, Wyo., 526 P.2d 52, 58; Guinand v. Atlantic Richfield Company, 10 Cir., 485 F.2d 414, 417. The determination of the standard of care or duty is a matter of law and not the province of the jury, Evans v. General Motors Corporation, 7 Cir., 359 F.2d 822, 824, certiorari denied, 385 U.S. 836, 87 S.Ct. 83, 17 L.Ed.2d 70. Both parties conceded this rule in Larsen v. General Motors Corporation, 8 Cir., 391 F.2d 495, 498, but it states, "The decisional law is in accord" when referring to this proposition. Further see Prosser, Law of Torts, supra. If the rule were otherwise the standard would rest in the whim and personal views of the jurors. The establishment of such duty is upon the plaintiff, Hatch v. Ford Motor Company, 163 Cal.App.2d 393, 329 P.2d 605, 607. This, then, poses the question, What was the duty of Fruehauf and Pacific Car & Foundry Company in manufacturing these items insofar as the design defect was concerned? A.L.I. Restatement of the Law Second, Torts 2d, § 402A, p. 347 (1965), carries its own definition which is particularly appropriate because appellant is seeking to proceed thereunder:

"* * * any product in a defective condition unreasonably dangerous to the user or consumer * * *"

However, Restatement, supra, subsection (h), p. 351, states the following:

"A product is not in a defective condition when it is safe for normal handling and consumption. * * *"

and this latter section has been cited with approval in the case of Keener v. Dayton Electric Manufacturing Company, Mo., 445 S.W.2d 362, 365. This duty has been described as follows:

"In addition to liability for negligent construction, a manufacturer is required to exercise ordinary care in planning or designing his product so that it is reasonably safe for the purposes for which it is intended. * * *" 1 Frumer & Friedman, Products Liability, § 7.01, p. 104.46 (1973).

Justice Roger J. Traynor suggests that a defect may be defined in the following manner:

"* * * A defective product may be defined as one that fails to match the average quality of like products, * * *" 32 Tenn.L.R. 367.

These definitions are all aimed at the product and it has been heretofore mentioned that we find no such showing in this record except the suggestion of an additional safety device unavailable and unknown at the time of the manufacture. There is no duty upon a manufacturer to adopt every possible new device which has been then conceived or invented, Marker v. Universal Oil Products Company, 10 Cir., 250 F.2d 603, 605; Garst v. General Motors Corporation, 207 Kan. 2, 484 P.2d 47, 61. Negligence cannot be proven because there is a better way later demonstrated, Dean v. General Motors Corporation, D.C. La., 301 F.Supp. 187, 192, which contains this rather homely common-sense observation:

"* * * Reasonable care does not require prescience nor is it measured with the benefit of hindsight. Tort law does not expect Saturday manufacturers to have the insight available to Monday morning quarterbacks."

This is cited with approval in Garst v. General Motors Corporation, supra, and is

particularly appropriate in the framework of this case. It is said in Garst, supra, as follows:

"In the determination of whether or not a manufacturer has in fact exercised the care and skill of an expert, several matters are to be considered. One of the most significant factors is whether others in the field are using the same design, or a safer design. Other factors to be considered are whether a safer design not yet in use is known to be feasible, and whether in the case of a new product there has been adequate testing. [Citations.]"

There was no safer design available at the time this unit was manufactured and there is absolutely no evidence of feasibility or any testing.

The appellant has not cited us to any case or authority wherein the facts are in any manner similar nor have we from our research found any case which would go so far as suggested by the appellant herein. We have examined the authorities cited by him, some of which we will discuss. Blohm v. Cardwell Manufacturing Co., 10 Cir., 380 F.2d 341, and upon which much reliance is placed, involves the question of the admissibility of expert opinion and evidence of competing comparative designs of other drilling rigs. Although in that case the court held that it was error not to receive the evidence, there is a definite statement therein that this evidence would not be competent to establish "standard of care" but was only received to show what might feasibly be done in the exercise of such care, 380 F.2d 344. The case is also notable for its strong dissent, which repeats the rule of Marker and remarks that the rule is well established in the tenth circuit and other circuits "that the existence or potential existence of a 'safer' design is not the issue in a claim of defective design," 380 F.2d 345. The case of Swearngin v. Sears Roebuck & Company, 10 Cir., 376 F.2d 637, is based upon established standards appearing in the record, i. e., "American Standard Safety Specifications" developed by American Standards, Inc. Hall v. E. I. Du Pont De Nemours & Co., Inc., D.C.N.Y., 345 F.Supp. 353, involves high explosives for which a high standard has always been required. Rivera v. Rockford Machine & Tool Company, 1 Ill.App.3d 641, 274 N.E.2d 828, involves a question of whether there was negligence because of the failure to incorporate certain *available* safety features. Bexiga v. Havir Manufacturing Corp., 60 N.J. 402, 290 A.2d 281, is based upon a failure to place safety devices upon the machine which were not only available but which it was customary that the purchasers would provide. We do not mention all the cases cited by appellant but find none which are applicable to this factual situation in our view.

From our view of the record to hold that the evidence here submitted was proof of a standard of care or duty upon these manufacturers would be to cast upon them a burden of clairvoyance which is doubtful the prophetic powers of Nostradamus could meet.

No discussion appears necessary in connection with the motion in limine because this evidence would not have tended to prove or disprove any of the issues of the remaining claims.

## INSTRUCTIONS

Appellant's other proposition is that the court erred in its refusal to give the following proffered instruction:

"YOU ARE INSTRUCTED that the manufacturer of a product has a duty of using reasonable care under circumstances so as to design its product to make it not accident or fool proof but safe for functional use for which it was intended and such requirement includes a duty to design product so that it will fairly meet emergencies which can reasonably be anticipated but a manufacturer is not an insurer that its product is from design viewpoint incapable of producing injury."

In its submission of this instruction plaintiff relies solely upon Larsen v. General

Motors Corporation, 8 Cir., 391 F.2d 495.[4] However, an examination of this instruction would make it the duty of a manufacturer "to design its product to make it not accident or fool proof *but safe for functional use*" (emphasis supplied) which is a misstatement of the law and cannot be justified by Larsen, which emphasizes that a product be "reasonably safe" and nowhere suggests the court had any intention of modifying the duty of the manufacturer beyond that point. This instruction upon its face and by virtue of that phrase does violence to the definitions of the duty of the manufacturer which appear herein. Even though a portion thereof may correctly state the law, it should have been refused, Edwards v. Harris, Wyo., 397 P. 2d 87, 90. This instruction if given would have submitted to the jury two different tests of duty, which surely would have been confusing, Sanders v. Pitner, Wyo., 508 P.2d 602, 606. There is no error in the refusal to give this instruction.

This case was tried under the standards of A.L.I. Restatement of the Law Second, Torts 2d, § 402A(1), pp. 347–348 (1965), and plaintiff acquiesced therein over the objections of defendants. Plaintiff urges us in this opinion to adopt these standards and to strike the requirement of "unreasonably dangerous to the user," urging that this has been modified in some jurisdictions. However, because of the posture of this case any such ruling and discussion would be dicta, which we have mentioned earlier is inappropriate in this opinion.

The judgment is therefore affirmed.

4. This case has not been immune from sharp criticism and judicial disagreement. For an analysis in depth of the criticism see Frericks v. General Motors Corporation, 20 Md.App. 518, 317 A.2d 494.