CATERPILLAR TRACTOR COMPANY,
Appellant (Defendant),

v.

Gloria L. DONAHUE, Administratrix, of
the Estate of Jerry Donahue, De-
ceased, Appellee (Plaintiff).

Gloria L. DONAHUE, Administratrix, of
the Estate of Jerry Donahue, De-
ceased, Appellant (Plaintiff),

v.

CATERPILLAR TRACTOR COMPANY,
Appellee (Defendant).

Nos. 83–58, 83–65 and 83–59.

Supreme Court of Wyoming.

Dec. 22, 1983.

Rehearing Denied Jan. 31, 1984.

G.G. Greenlee and Robert M. Shively of Murane & Bostwick, Casper, for Caterpillar Tractor Co.

James E. Fitzgerald, Cheyenne, for Donahue.

Before ROONEY, C.J., and THOMAS, ROSE, BROWN and CARDINE, JJ.

BROWN, Justice.

Jerry Donahue was killed on November 8, 1977, when the front-end loader he was operating rolled over and crushed him inside the fiberglass cab. Afterwards, his wife, Gloria Donahue, initiated this suit, a wrongful death action, against the manufacturer of the loader, Caterpillar Tractor Company (hereinafter Caterpillar). The loader involved here was a caterpillar model 988 wheel loader manufactured in 1966. The case was tried to a jury on the theory that Caterpillar had negligently manufactured the loader in 1966 without a rollover protection structure, also known as a ROPS. At the close of the Donahue case in chief and again at the close of rebuttal, Caterpillar unsuccessfully moved for a directed verdict. After receiving the case, the jury concluded that Caterpillar was negligent and awarded Mrs. Donahue $1,500,000. Caterpillar then moved for a judgment notwithstanding the verdict, which motion was denied. Caterpillar appealed and Donahue cross-appealed.

Caterpillar has raised the following issues:

1. Whether the plaintiff established the existence of a duty and a breach thereof by Caterpillar;

2. Whether there were intervening causes of the accident which rendered any negligence of Caterpillar too remote to be a proximate cause;

3. Whether the front-end loader's allegedly defective condition was so open and obvious that no recovery may be had;

4. Whether the decedent's negligence in operating the front-end loader must be deemed a proximate cause of the accident;

5. Whether it was prejudicial error for the trial court to refuse to admit a film depicting a rollover by an identical front-end loader;

6. Whether it was prejudicial error for the trial court to admit certain opinion testimony;

7. Whether it was prejudicial error for the trial court to admit certain exhibits;

8. Whether it was prejudicial error for the trial court to admit the transcribed testimony of a deceased expert;

9. Whether the trial court properly instructed the jury that conforming with the custom of an industry was not a substitute for ordinary care but merely evidence of what ordinary care may be;

10. Whether the supreme court should grant a remittitur if it does not reverse on other grounds; and

11. If this court grants plaintiff's motion to dismiss for the failure to timely file a notice of appeal, whether the trial court erroneously denied Caterpillar an extension of time to file its notice of appeal.

Donahue's sole issue on appeal is contingent upon a reversal on Caterpillar's appeal. In such an event, Donahue requests this court to accept the theory of strict products liability as permissible in Wyoming, thus allowing the jury to consider it on remand.

Because we have denied Donahue's motion to dismiss, we need not consider Caterpillar's final issue. Because we are affirming the judgment of the district court, we need not consider the issue raised by Donahue in her appeal.

Caterpillar's issues on appeal may be broken down into three categories. Caterpillar's first four issues address the necessary elements of a cause of action for negligence and whether there existed sufficient evidence to support the jury's conclusion that the essential elements were present. Caterpillar's challenge to one of the instructions also concerns the elements of negligence. The second four issues concern the trial court's rulings on the admissibility of certain evidence. Finally, Caterpillar seeks a remittitur. We shall address the issues in each category, discussing the specific facts of the case as they become relevant to the issues.

We will affirm.

I

Actionable negligence arises where a party breaches a duty thereby proximately causing injury. *Beard v. Brown,* Wyo., 616 P.2d 726 (1980). The essential elements of a negligence claim are: 1) a duty, 2) a violation of the duty, 3) proximate causation, and 4) an injury. *McClellan v. Tottenhoff,* Wyo., 666 P.2d 408 (1983).

Caterpillar contends that Donahue failed to establish that it owed the decedent a duty. This court has previously held that the existence of duty is a question to be decided as a matter of law. *McClellan v. Tottenhoff, supra;* and *Medlock v. Van Wagner,* Wyo., 625 P.2d 207 (1981). This means that the courts must decide:

"* * * [w]hether, upon the facts in evidence, such a relation exists between the parties that the community will impose a legal obligation upon one for the benefit of the other—or, more simply, whether the interest of the plaintiff which has suffered invasion was entitled to legal protection at the hands of the defendant. This is entirely a question of law, to be determined by reference to the body of statutes, rules, principles and precedents which make up the law; and it must be determined only by the court. * * *" Prosser, Law of Torts, § 37, p. 206 (4th Ed.1971).

We have previously recognized that a manufacturer owes a duty of care to those who use its product. The manufacturer is required to exercise reasonable care in the planning, designing, and manufacturing of a product in order to ensure that it is reasonably safe to use. *Maxted v. Pacific Car & Foundry Company,* Wyo., 527 P.2d 832 (1974).

Accordingly, Caterpillar, as a manufacturer, had a duty in 1966 to make its front-end loaders reasonably safe. This entailed the exercise of reasonable care for the protection of those who were expected to use the front-end loader. Decedent, as a user of the front-end loader, comes within the class of people to whom the duty was owed.

Once a duty has been found to exist, it is for the jury to decide what amount of care a reasonable man would have exercised in order to make his product safe for the consumer. The rationale behind turning this decision over to the jury has been explained by Prosser:

"* * * Since it is impossible to prescribe definite rules in advance for every combination of circumstances which may arise, the details of the standard must be filled in in each particular case. The question then is what the reasonable man would have done under the circumstances. Under our system of procedure, this question is to be determined in all doubtful cases by the jury, because the public insists that its conduct be judged in part by the man in the street rather than by lawyers, and the jury serves as a shock-absorber to cushion the impact of the law. * * *" Prosser, supra at 207.

But Prosser also notes:

"In many cases, however, the court may be required to remove the issue of the particular standard from the jury. It is possible to say, in many cases, that the conduct of the individual clearly has or has not conformed to what the community requires, and that no reasonable judgment could reach a contrary conclusion. The court must then direct a verdict for

the plaintiff or for the defendant, or even set aside a verdict once rendered; or, if the evidence as to the facts is in conflict, instruct the jury as to the conclusion it must draw from a particular version of the facts. * * * " (Footnote omitted.) Id.

Caterpillar's position is that it was entitled to either a directed verdict or judgment notwithstanding the verdict on the issue of whether a reasonable man in 1966 would have installed a rollover protection structure (hereinafter ROPS) on a front-end loader. It bases the contention upon two points. First, it argues that since no other manufacturer of front-end loaders installed ROPS in 1966, a reasonable man would not have installed a ROPS either. Second, it alleges that in 1966 it was not feasible to have installed a ROPS which would have withstood the rollover which killed the decedent here.

■ When reviewing a trial judge's denial of motions for a directed verdict and for a judgment notwithstanding the verdict, this court must presume that all the evidence of the prevailing party is true. Further, we leave out of consideration all the opposing party's conflicting evidence while inferring from the prevailing party's evidence those conclusions which may reasonably and fairly be drawn. *White v. Ogburn,* Wyo., 528 P.2d 1167 (1974); and *Potts v. Brown,* Wyo., 452 P.2d 975 (1969).

■ In *Maxted v. Pacific Car & Foundry,* supra, we discussed what factors should be considered by the fact finder in deciding whether a manufacturer exercised reasonable care in not incorporating particular safety features on a product. One of the more significant factors there was whether other manufacturers of the same product had included the features. But, as we said, that consideration was merely a factor; it was not determinative on the issue of negligence. *The T.J. Hooper,* 60 F.2d 737 (2nd Cir.1932). So, Donahue's failure in this case to demonstrate that any other manufacturer of front-end loaders was attaching a ROPS in 1966 by itself did not justify either a directed verdict or a judgment notwith-standing the verdict as the trial judge correctly concluded.

We noted in *Maxted,* supra, another factor; this was whether a safer design not yet in use was known to be feasible. This information could be used to establish that the custom of the industry was unreasonable. Donahue presented considerable evidence that the danger from rollovers had been long recognized and that during the fifties a push was commenced to install canopies and ROPS to front-end loaders.

The appellant, Caterpillar, relies heavily on Maxted, supra, in support of its position that in 1966 it would have been unreasonable to require it to install ROPS as standard equipment. In Maxted plaintiff's own experts testified that they had never seen or heard of a "jettison device." In this case, however, there was considerable evidence that Caterpillar knew, or should have known, the need for ROPS. Caterpillar should have also been aware that the industry was capable of producing ROPS. Further, that the state of the art with respect to ROPS was such that it was feasible to install them at the time of manufacture.

■ As we have previously set out, on appeal we resolve conflicts in evidence in favor of the prevailing party. In the present case there was conflicting evidence presented on whether it was feasible in 1966 to install a ROPS on a front-end loader which could have protected the decedent.

Evidence at trial established that prior to 1966 Caterpillar had experience and information demonstrating the need, availability and feasibility of rollover protection structures. Certain manufacturers of ROPS were providing what was required in ROPS protection in 1966. Appellant knew before 1966 that operators of its equipment were being killed because the equipment lacked ROPS. Other information about hazards was available before 1966. Mr. Farmer, a safety engineer for the state of California, knew in 1965 that there was a need for ROPS on rubbertired front-end loaders. Though Caterpillar produced evidence to the contrary under the standard of review,

we do not consider it. Furthermore, Caterpillar admitted that at the time of the manufacture of the loader involved here (1966), rollover protection structures were being supplied by Tube-Lok, Products Division of Portland Wire and Iron Works and Medford Steel.

Additional evidence received at trial was that: 1) the American Equipment Industry had the technical ability to produce adequate ROPS, 2) when appellant finally designed ROPS, it relied on references on energy absorption dating back to 1958, 3) ROPS could have been built in 1966, which would have withstood the rollover here, and 4) appellant, as a member of the National Safety Council, should have known of a 1965 publication of the Council which stated that in cases where loader operators were being killed in rollovers, cabs sufficient to withstand the weight of the machine would have saved the operators.

In addition, there was considerable evidence to the effect that the manufacturer is in the best position to install ROPS. Caterpillar's design reference guide states that "safety must be 'built into' the product rather than be an 'add on' attraction for which the customer is responsible." A long-time engineer of Caterpillar agreed that the manufacturer is in the best position to see that the vehicle structure and ROPS are compatible, and that it is more difficult to add ROPS if it is not designed into the vehicle initially. Caterpillar's vice president recognized it should "design the greatest degree of safety into the machine." Henry Dean Bordeaux, Caterpillar's reconstruction expert, testified that safety should be built into a product rather than offered as an add on.

Finally, the evidence showed fatalities with ROPS are one-third less than those without ROPS, notwithstanding the fact that the cases where ROPS save lives are likely under reported. In instances where a ROPS is installed and the seat belt is used in rolls of less than one full roll, Mr. Bordeaux knew of no deaths on Caterpillar equipment regardless of the type of ROPS being used.

We next address Caterpillar's contention that the trial court erred in instructing the jury that:

"In determining whether anyone was or was not negligent, you may consider any evidence of any custom of a profession or industry in conducting its operations. However, the standard of care is not fixed by custom, as custom cannot overcome the requirements of reasonable safety and ordinary care. The standard is always ordinary care, and the presence or absence of custom does not alter that standard. What others do is some evidence of what should be done, but is not conclusive evidence, and is never a substitute for ordinary care. An operational practice, although long indulged in, but which does not afford reasonable protection to those engaged in that operation, does not relieve from liability those responsible if it results in negligently causing injury or damage."

Caterpillar objects to that instruction on the following theory:

" * * * The instruction as given not only reduced the fact that no manufacturer was doing what the plaintiff proposed, to *insignificance*, it presented the jury with the opportunity to set the standard of care without regard to what was occurring in the entire heavy equipment industry. It detracted severely from the ability of defendant's counsel to argue that plaintiff's attack was upon the entire industry and lent support to the position that the plaintiff's counsel could attack the entire industry and the law would support them.

"In an attempt to lessen the prejudicial effect of Instruction 7, defendant offered an alternative which changed the words 'is never a substitute' to 'is not a substitute * * *' and left off the last redundant, conclusory and argumentative sentence, but even this proposal was rejected by the trial court. * * * "

However, we have stated previously:

"Custom may be evidence bearing upon the question of negligence, but the standard is not fixed by custom. The stan-

dard is always due care. The presence or absence of custom does not alter that standard. Custom may assist in the determination of what constitutes due care. What others do is some evidence of what should be done, but custom is never a substitute for due care. [Citations.]" *Pan American Petroleum Corporation v. Like,* Wyo., 381 P.2d 70, 76 (1963).

" * * * An operational practice, although long indulged in, but which does not afford reasonable protection for those engaged in that operation, does not relieve from liability those responsible if it results in negligently causing injury or damage." *Rocky Mountain Trucking Company v. Taylor,* 79 Wyo. 461, 335 P.2d 448, 451 (1959).

■ The instruction here follows the language of this court in those two cases. We do not see how the instruction can be considered erroneous.

■ Next we address Caterpillar's contention that even if it had a duty and it breached the duty, the breach of the duty was not a proximate cause of decedent's death. As we have observed before, "[t]he law does not charge a person with all the consequences of a wrongful act but ignores remote causes and looks only to the proximate cause." *Kopriva v. Union Pacific Railroad Company,* Wyo., 592 P.2d 711, 713 (1979). Whether a breach of duty is a proximate cause of injury is a question of fact for the jury to determine. *McClellan v. Tottenhoff,* supra; and *Endresen v. Allen,* Wyo., 574 P.2d 1219 (1978).

■ Caterpillar argues that the failure of decedent's employer to install a ROPS on the front-end loader was an intervening cause which made Caterpillar's negligence in not installing a ROPS too remote to be the proximate cause of decedent's death. However, the jury concluded that decedent's employer was not negligent in failing to attach a ROPS and that the employer's action or inaction in no way served as a cause of the accident. These were proper questions of fact for the jury to decide. We cannot conclude that as a matter of law the

jury's findings were erroneous. Accordingly, we cannot reverse on this issue.

■ We now turn to Caterpillar's argument that the front-end loader's allegedly defective condition was so open and obvious that it, as the manufacturer, should not be held liable. The main premise behind Caterpillar's argument is that when goods are obviously defective, the parties who use them voluntarily assume the risks involved and cannot seek recovery if in fact injury results. However, this proposition is wrong.

" * * * It seems to us that a rule which excludes the manfacturer from liability if the defect in the design of his product is patent but applies the duty if such a defect is latent is somewhat anamolous. The manufacturer of the obviously defective product ought not to escape because the product was obviously a bad one. The law, we think, ought to discourage misdesign rather than encouraging it in its obvious form." *Palmer v. Massey-Ferguson, Inc.,* 3 Wash.App. 508, 476 P.2d 713, 718 (1970).

"[T]he bottom does not logically drop out of a negligence case against the maker when it is shown that the purchaser knew of the dangerous condition. Thus if the product is a carrot-topping machine with exposed moving parts, or an electric clothes wringer dangerous to the limbs of the operator, and if it would be feasible for the maker of the product to install a guard or safety release, it should be a question for the jury whether reasonable care demanded such a precaution, though its absence is obvious. Surely reasonable men might find here a great danger, even to one who knew the condition; and since it was so readily avoidable they might find the maker negligent. * * *" 2 Harper & James, The Law of Torts § 28.5, p. 1543 (1956).

In *Brittain v. Booth,* Wyo., 601 P.2d 532 (1979), we held that "assumption of risk" was a form of contributory negligence and as such was not an absolute defense. This was because under comparative negligence, contributory negligence is not an absolute

bar to liability, but a basis for apportionment of fault.

■ Further, we must observe that like questions concerning a defendant's negligence, the jury must decide if a plaintiff was contributorily negligent in his use of an obviously defective product. However, as a matter of law, the mere use of a dangerous product does not constitute negligence, just as the mere acceptance of an extra hazardous job cannot be considered negligence. *Rocky Mountain Trucking Company v. Taylor,* supra. There are many compelling reasons why individuals may be required to take an extra hazardous job or use dangerous equipment. In order for contributory negligence to be found, there must be evidence that care commensurate with the risks involved was not used. Accordingly, we reject Caterpillar's argument that, since the alleged defect was open and obvious, it cannot be held liable as a matter of law.

This brings us to Caterpillar's next claim of error, whether decedent's negligence in operating the front-end loader must be considered as a proximate cause of the accident. The issue of decedent's contributory negligence was presented to the jury. In the special verdict form the jury concluded that, yes, the decedent had been negligent, but, no, his negligence was not a proximate cause of his death. Caterpillar now claims that this was an inconsistent verdict which mandates a new trial.

An examination of the record in this case reveals that when the verdict was returned, the judge and counsel retired to chambers in order to review the verdict for inconsistencies. No challenge to the verdict was made at that time. We have previously ruled that challenges to irregular or inconsistent verdicts may be waived by the failure to object before the discharge of a jury.

"The matter of waiver is grounded, among other things, on the proposition that jury trials are time-consuming and costly proceedings and while a litigant is entitled to a fair trial, certain it is that he has responsibilities to assist the trial court in bringing about such a result. It will not do to permit a litigant to remain mute and speculate on the outcome of a jury trial on the record made with knowledge of irregularities or improprieties therein that might readily and easily have been corrected during the trial and then, when misfortune comes his way, to attempt to set the invited result aside by way of a new trial because of such matters. It is not fitting for the trial court or this court knowingly to reward or condone such conduct. As so aptly stated by Judge Rossman in *Fischer v. Howard,* 201 Or. 426, 271 P.2d 1059, 1063, 49 A.L.R.2d 1301, a loser should not by design get 'two bites at the cherry.' " *DeWitty v. Decker,* Wyo., 383 P.2d 734, 736 (1963).

■ Even though time was set aside to review the verdict here, no complaint was registered against it. Any questions could have been answered before the jury was discharged. The proper time to challenge the verdict was when the jury was still able to explain that which Caterpillar now considers to be an inconsistency. We will not now entertain Caterpillar's challenge to the verdict.

## II

■ We turn to Caterpillar's contentions that several of the trial court's rulings regarding the admissibility of evidence were erroneous. Questions of admissibility lie within the discretion of the trial court. *Caldwell v. Yamaha Motor Co., Ltd.,* Wyo., 648 P.2d 519 (1982). On appeal we will not reverse absent a clear abuse of discretion. *Barnard v. Wendling,* Wyo., 627 P.2d 603 (1981). In order to prevail, Caterpillar must demonstrate an obvious abuse of discretion in the trial court's rulings.

Caterpillar's first challenge to a ruling of the trial court arises from the court's refusal to admit a film of a 1968 experiment in which a front-end loader was intentionally rolled over. The trial court refused to admit the film because of Caterpillar's failure to comply with a court order providing, "defendant will respond to the plaintiff's interrogatories and request for production

served June 3, 1982 as clearly and as precisely as possible in good faith."

Rule 37(b), Wyoming Rules of Civil Procedure, provides:

"(b) *Failure to comply with order.*

"(2) Sanctions by Court in Which Action Is Pending.—If a party or an officer, director, or managing agent of a party or a person designated under Rule 30(b)(6) or 31(a) to testify on behalf of a party fails to obey an order to provide or permit discovery, including an order made under subdivision (a) of this rule or Rule 35, or if a party fails to obey an order entered under Rule 26(f), the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:

\* \* \* \* \* \*

"(B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting him from introducing designated matters in evidence."

We have previously considered the exclusion of evidence by a trial court on the basis of Rule 37(b)(2)(B), supra, in *Matter of Estate of Mora,* Wyo., 611 P.2d 842, 846 (1980). There we stated, "Broad discretion is given to the trial court with regard to sanctions."

The Wyoming Rules of Civil Procedure were designed to allow ample discovery. The rationale for this is that justice can be better served when the element of surprise is removed from a trial. Plaintiffs would have been surprised and prejudiced by the admission of this film because they were not provided with statistical data of the conditions under which the simulated rollover was conducted. Little sympathy will be shown those who undermine the principles of discovery. See *Smith v. Ford Motor Company,* 626 F.2d 784 (10th Cir.1980), cert. denied, 450 U.S. 918, 101 S.Ct. 1363, 67 L.Ed.2d 344 (1981).

■ Here, Caterpillar has not argued that the trial court erred in determining that it violated the court order. Its argument has been that the evidence was so

relevant that the refusal to admit it was error. In such circumstances as these we see no abuse of discretion.

Next, Caterpillar argues that the trial court abused its discretion in allowing three lay witnesses and one expert witness to give their opinions regarding certain issues in the case. The lay witnesses' testimony arose in the following manner according to Caterpillar:

" \* \* \* By one question or another, directly or indirectly, witnesses Fister Pierantoni and Heck were interrogated by plaintiff's counsel with respect to their opinions concerning the feasibility (or ability) of Caterpillar to have installed rollover protective structures in 1966 as well as the desirability of having the manufacturer do so as opposed to having such structures added at a later date. Such interrogation was permitted over the foundation objections of the defendant Caterpillar. The witnesses referenced were defense witnesses and the opinions were elicited on cross examination, not upon the direct examination of Caterpillar. \* \* \*"

Rule 701, Wyoming Rules of Evidence, provides:

"If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue."

■ Caterpillar complains that its witnesses, Fister, Pierantoni and Heck were not experts, but that appellee through cross-examination made these witnesses her own experts and elicited testimony in support of her case. We see nothing wrong with that tactic if, in fact, it happened. This is not a novel tactic, especially in situations where a plaintiff has limited funds to prosecute its case. Rule 611(b), W.R.E., permits cross-examination on additional matters as if on direct examination. The limits to cross-examination are discretionary with the trial court so long as the

**1286**

inquiry pertains to relevant matters. *Chrysler Corporation v. Todorovich*, Wyo., 580 P.2d 1123 (1978).

■ The three witnesses had varying technical experiences and knowledge about ROPS. Expertise perhaps is a relative matter. Even if these witnesses were not experts, for all purposes they were entitled to give opinion testimony if their opinions were "rationally based on the perception of the witness," and "helpful to a clear understanding of the testimony or the determination of a fact in issue." Rule 701, W.R.E.

■ A fair reading of the testimony of these three witnesses causes us to conclude that their testimony meets the two tests required by Rule 701, W.R.E. In any event, it is well settled that the credibility of witnesses and the weight of their testimony are for the trier of fact to determine. *Continental Motors Corporation v. Joly*, Wyo., 483 P.2d 244 (1971); and *Cimoli v. Greyhound Corporation*, Wyo., 372 P.2d 170 (1962). We find no abuse of discretion.

■ Caterpillar also challenges the trial court's determination that Donahue's witness, John Bollard, was an expert, thus allowing him to give opinion testimony. Rule 702, W.R.E., provides:

"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

Under that rule, it has been held that the trial court's determination that a witness is qualified as an expert will not be reversed except in extreme cases or when a clear abuse of discretion is shown. *McDaniel v. State*, Wyo., 632 P.2d 534 (1981). Whether Mr. Bollard was qualified as an expert "is a matter vested within the discretion of the trial court, and the exercise of that discretion will not be disturbed on appeal unless it is clearly and prejudicially erroneous, and then only in extreme cases." *Reed v. Hunter*, Wyo., 663 P.2d 513, 517 (1983).

■ Here, Caterpillar contends that the witness, for all his education and experience in aerospace and structural engineering, lacked practical association with the heavy equipment industry. However, such an argument properly goes to the weight of the expert's testimony and does not establish an abuse of discretion by the trial court.

Caterpillar also challenges the trial court's admission of appellee's exhibit No. 1, a report entitled, "Study and Evaluation of Tractor Canopies in Rollover Accidents," on the grounds that, 1) there was no foundation for exhibit No. 1; 2) no witness was produced to testify to its authenticity; 3) defendant had no opportunity to cross-examine the author of this document; 4) Caterpillar had no opportunity to cross-examine the manufacturers of canopies that were discussed in this report; 5) a picture of a crushed operator in an overturned machine was inflammatory; and 6) there was no evidence to show that Caterpillar was aware of this document.

■ Exhibit No. 1 was admitted as a domestic public document authorized by Rule 902, W.R.E., which rule specifically provides that "extrinsic evidence of authenticity as a condition precedent to admissibility is not required" for this type document. The manner in which Exhibit No. 1 was received in evidence is consistent with Rule 901(a), and (b)(7) & (b)(8), W.R.E. The hearsay objection suggested by appellant is satisfied specifically by Rule 803(8), W.R.E., (Public Records and Reports), and (16) (Statements in Ancient Documents). Appellant cites no authority that there is a right to cross-examine those who prepare documents admitted under Rule 803(8) and (16), W.R.E., nor do they cite authority allowing the cross-examination of manufacturers who are mentioned in the document (Exhibit No. 1). The impracticality or impossibility of cross-examining those who prepare ancient documents, public records and reports and those referred to in those documents is obvious, and we need not elaborate.

██ Caterpillar argues that a picture contained in Exhibit No. 1 is inflammatory, and therefore not admissible. As we have often held, we will not consider an error unless there is an objection at trial or unless the error amounted to plain error. *Wilhelm v. Lake,* Wyo., 630 P.2d 499 (1981). An objection to the picture was not raised at trial nor does it amount to plain error.

Finally, Caterpillar argues that it was not aware of plaintiff's Exhibit No. 1 in advance of trial; however, it does not cite any authority or give logical reasons why appellee was obligated to make appellant aware of this report. In any event, the evidence is that if Caterpillar did not know of the exhibit, it should have. Robert Switzer, listed as a Caterpillar witness and its representative at trial, said he probably had seen the report.

The second exhibit admitted by the trial court, over the objection of Caterpillar, was Donahue's exhibit 319b. Appellant claims that there was insufficient foundation for this exhibit to be admitted.

Plaintiff used exhibit 319b, together with exhibit 311, to show that a roll bar design had been approved and was available for 988 loaders in 1966. Exhibit 319b is a 1964 certificate of approval from the State of California, Division of Industrial Safety, for a canopy on a 988 loader. The certificate was issued to the Tube-Lok Division of Portland Wire and Steel Warehouse, a roll bar manufacturer. Exhibit 311 is a letter from Caterpillar which refers to the certificate and states that the California Division of Industrial Safety had reportedly approved a roll bar design of the Tube-Lok Division for the 988 loader. The letter concludes: "Thus, approved installations are available for all current models except the 621, J621 and 980."

Both of these exhibits were introduced and admitted into evidence through Caterpillar's witness, Switzer, who was called by Donahue as an adverse witness. Exhibit 311 was admitted into evidence without objection from Caterpillar as a business record. Exhibit 319b was referred to in exhibit 311 and the witness testified that he was

familiar with the certificate, could identify it, and had a copy of it. Defense counsel conducted a voir dire examination of the witness and moved that exhibit 319b be excluded because it was irrelevant and lacked foundation. A discussion followed between the court and counsel because of confusion over the status of the certificate. Appellee indicated to the court that the certificate was maintained in Caterpillar's files as a business record. The court then admitted the certificate as a business record maintained by Caterpillar. Appellant made no indication to the court that the certificate was not a business record belonging to Caterpillar. No further objection was made and nothing else was discussed. In Caterpillar's brief to this court there is no denial of the fact that the certificate, exhibit 319b, was part of their business records.

██ Whether or not exhibit 319b is a business record belonging to Caterpillar, there appears to be sufficient foundation for its admission because it is included in exhibit 311 which is a business record of Caterpillar's. We hold, therefore, that there is no basis upon which to reverse the trial court's ruling to admit exhibit 319b.

At trial appellee offered the previously recorded testimony of Ovid Holmes and George See taken from an Alaska case in which Caterpillar was a party. *Caterpillar Tractor Company v. Beck,* Alaska, 593 P.2d 871 (1979). Before the trial in this case both Holmes and See died. Appellant made a motion in limine and objected at trial to exclude the previously recorded testimony of Holmes and See. The basis of appellant's objection at the trial level was that the Alaska case and the pending case were factually different. The major difference alleged was that the tractor involved in the Alaska case was a model 944, whereas the model involved here was a 988.

██ Both the Alaska case and this case involve: 1) the issue of the lack of ROPS, 2) Caterpillar loaders, one a 1964 model, and the other a 1966 model, and 3) a rollover accident. The two cases are substantially the same; therefore, we find no abuse of

discretion in the trial court's decision to allow this previously recorded testimony into evidence.

On appeal Caterpillar addresses other reasons for objecting to the use of the previously recorded testimony. Caterpillar urges us to hold that from a policy standpoint, expert testimony should not fall within the unavailable witness status of Rule 804(b), W.R.E. Caterpillar's rationale for this contention is that "an expert is altogether different than a lay witness who has personally observed certain facts which would not repeat themselves" and that "the death of an expert does not represent the unavailability of evidence, as another expert can be found." Appellant reasons that "the prior testimony of a 'replaceable' expert should not be permitted because it provides no opportunity for a change in plaintiff's strategy. * * * "

Rule 804, W.R.E., provides in pertinent part:

"(a) *Definition of unavailability.*—'Unavailability as a witness' includes situations in which the declarant:

* * * * * *

"(4) Is unable to be present or to testify at the hearing because of death or then-existing physical or mental illness or infirmity; * * *

"(b) *Hearsay Exceptions.* The following are not excluded by the hearsay rule if the declarant is unavailable as a witness.

"(1) *Former Testimony.* Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross or redirect examination."

Rule 804 speaks of the unavailability of a witness and not the unavailability of evidence. The rule is not limited to non-expert witnesses. Appellant in effect urges

us to rewrite the rule and limit its application to situations where the evidence is irreplaceable and disregard the plain language of the rule that speaks only to the unavailability of the witness.

 The rationale behind Caterpillar's argument that Rule 804 should not apply to an expert witness is not, however, illogical. Scenarios could be conceived where it would be unfair to admit into evidence the prior testimony of a deceased expert witness. Likewise, a factual situation could be contrived where denying the admission of previously recorded testimony of a deceased expert witness would completely destroy a case. Therefore, the trial court should consider the totality of the facts and surrounding circumstances of each case to determine whether or not previously recorded testimony of a deceased witness should be admitted under Rule 804(b). The admission or rejection of this type of testimony is a discretionary decision of the trial court and its ruling will not be overturned unless there has been an abuse of discretion. We find none.

Caterpillar suggests that its strategy was different in the Alaska case, and that the motive for cross-examination of Holmes and the examination of See was unlike that in the present case. In 4 Wienstein, Evidence, § 804(b)(1)(04), p. 804–67 (1981), quoting with approval 5 Wigmore, Evidence, § 1388 p. 111 (Chadbourn rev. 1974), the law is stated:

" * * * *whether the former testimony was given upon such an issue that the party-opponent in that case had the same interest and motive in his cross-examination that the present opponent has;* and the determination of this ought to be left entirely to the trial judge."

As previously stated, we find that these two cases are substantially similar so that the trial judge had a basis upon which to allow this testimony into evidence.

Appellant further objected to the admission of plaintiff's exhibits 422(9), 422(10) 422(24). These are documents from the notebook of Ovid Holmes, and are canopy designs, allegedly dating back to the late

1940's and early 1950's. They were received into evidence as part of the background and foundation for Mr. Holmes' testimony in the Alaska case.

We have ruled that the previously recorded testimony of Ovid Holmes was properly admitted into evidence. It would be inconsistent for us to now say that some of the materials that were used to support Mr. Holmes' testimony in the Alaska case were not admissible here.

We have already addressed the objections which Caterpillar made to the admission of the prior recorded testimony of Mr. Holmes and Mr. See, and we can find no further objections made by Caterpillar in regard to this testimony. Caterpillar did, however, object to the admission of exhibits 422(9), 422(10), and 422(24) on grounds other than hearsay. Caterpillar objected that these exhibits were irrelevant and lacked foundation.

■ We will first address the relevancy objection. These exhibits were initially admitted in the Alaska case to show the development of the state of the art for ROPS. Each of these exhibits is a drawing from Mr. Holmes' notebook showing designs and specifications for certain canopies. The trial court here also allowed these exhibits into evidence to show the development of the state of the art for ROPS. There was considerable concern in this case as to the availability and feasibility of using ROPS in 1966; therefore, this evidence is relevant to the determination of this case.

The lack of foundation objection is without merit. Before each exhibit was admitted into evidence, Mr. Holmes in his testimony, identifies and explains his relationship to the exhibits. Each exhibit is a drawing out of Mr. Holmes' notebook which shows the history of ROPS. We find that no rule of evidence was violated by the admission of these exhibits.

The final evidentiary issue we address is that the trial court should have allowed objections other than hearsay, to the previously recorded testimony of Mr. Holmes and Mr. See, and to the supporting exhibits, plaintiff's exhibits 422(9), 422(10), and 422(24). It is true that Rule 804(b)(1), W.R.E., only satisfies the hearsay objection and that all other objections to this evidence remain viable. In support of this, Caterpillar directs our attention to Louisell and Mueller, 4 Federal Evidence § 487, pp. 1076, 1077 (1980), which states:

"Rule 804(b)(1) addresses only the hearsay issues. Thus, a statement within the exception remains excludable on objection based upon some other ground if live testimony by the declarant of like effect would be excludable upon such objection."

The only objections made by Caterpillar, other than hearsay, have already been addressed.

### III

The final issue we address is whether we should grant a remittitur as a condition of an affirmance. In *Cates v. Eddy*, Wyo. 669 P.2d 912 (1983), we stated: "If the verdict is so large or small that it shocks the judicial conscience, the court has not only the right, but the duty, to grant remittitur or additur accordingly."

■ Here, our judicial conscience is not shocked. The decedent was 35 years old when he died. He was married and had three children. The jury verdict of $1,500,-000 was high, but under the circumstances not unreasonably so.

Affirmed.

ROONEY, Chief Justice, dissenting.

I would dismiss this appeal for failure to file a timely notice of appeal.

"The timely filing of a notice of appeal is jurisdictional. * * *" Rule 1.02, W.R. A.P.

"An appeal * * * shall be taken by filing a notice of appeal * * * within fifteen (15) days from entry of the judgment or final order appealed from * * *. The running of the time for appeal in a civil case is terminated as to all parties by a timely motion made by any party pursuant to any of the rules hereinafter enu-

merated, and the full time for appeal commences to run and is to be computed from the entry of any of the following orders made upon timely motion under such rules, or when such motions are deemed denied; * * * Rule 50(b), W.R.C.P.; * * * Rule 59, W.R.C.P." Rule 2.01, W.R.A.P.

Both Rule 50(b) and Rule 59, W.R.C.P., provide that motions thereunder shall be deemed denied if not determined within sixty days, provided that the court can continue the period for not more than ninety days from entry of the judgment.

The schedule of the pertinent filings in this case is as follows:

> 11/17/82 — Judgment entered
> 11/29/82 — Rule 50 and Rule 59 motions timely filed
> 2/15/83 — Motions deemed denied
> 3/2/83 — Deadline for filing notice of appeal
> 3/11/83 — Notice of appeal filed
> 3/15/83 — Amended notice of appeal filed.

Obviously, the notices of appeal were not timely filed.

However, appellant argues that the judgment was not final inasmuch as it did not determine the amount of costs, and, therefore, the time for filing a notice of appeal would not commence to run until the order on costs was filed on March 1, 1983. The judgment provided in part:

> "IT IS FURTHER ORDERED that the plaintiff shall file her statement of costs. The costs allowed by the court shall become a part of this judgment."

Normally, the settlement of the amount of costs is not a part of the judgment. It is frequently a post judgment computation. Often, it cannot be otherwise. As a collateral order, it does not affect the finality of the judgment.

> "A judgment is the final determination of the rights of the parties in action. * * * "
> Rule 54, W.R.C.P.

Costs are the subject of subsection (d) of that rule. It provides that costs be allowed as of course to the prevailing party unless the court directs otherwise or unless rules and statutes expressly provide otherwise.

The rule treats costs as an adjunct to the judgment, although includable therein.

The separation of the costs from the judgment insofar as finality is concerned is illustrated by the fact that an appeal may be had relative to the ruling on costs entirely apart from the judgment.

> " * * * But a final judgment does not always end the lawsuit. Decisions may be necessary after an appeal has been taken or after the time for appeal from the final judgment has expired. The final judgment rule does not preclude review of such decisions. They are themselves subject to the test of finality, but an appeal can ultimately be taken from them.
> " * * * The following postjudgment orders have been held to be final: * * * an order taxing costs; * * * Of course, appeals from such orders do not permit an attack on the underlying judgment if it is then final because it has been affirmed on an earlier appeal or because the time for appeal has expired. * * * " 9 Moore's Federal Practice ¶ 110.14[1], pp. 196–197.

See *Hill v. Whitlock Oil Services, Inc.*, 450 F.2d 170 (10th Cir.1971), 14 A.L.R.Fed. 895; and *United States v. 2,186.63 Acres of Land, Wasatch County*, Utah, 464 F.2d 676 (10th Cir.1972).

The definition of a judgment, supra, reflects finality to be on that which has to do with the merits of an action. Costs are collateral to the merits of an action. They are not included in that which gave rise to the action.

> " * * * [W]here further action of the court is necessary to give a complete adjudication upon the merits, the judgment under which the further question arises is to be regarded, not as final, but as interlocutory.
> "However, a judgment on the merits defining and settling the rights of the parties is not rendered interlocutory by the fact that further orders may be necessary to carry into effect the rights settled by the judgment. * * * " 47 Am. Jur.2d, Judgments, § 1054, p. 124.

The presence or absence of cost provisions in an order or judgment, and the scope thereof, may be error, but such alone cannot be the basis of determining the finality of the order or judgment.

The notice of appeal was not timely filed in this case and I would dismiss the appeal for that reason.